1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   MARIO A. IRIAS,                    )
                                        )     No. C 04-02740 JW (PR)
12              Petitioner,             )
                                        )     ORDER DENYING PETITION FOR
13       vs.                            )     A WRIT OF HABEAS CORPUS
                                        )
14   JEAN S. WOODFORD, Warden,          )
                                        )
15              Respondent.             )
                                        )
16   _____  )

17

18          Petitioner, a California prisoner currently incarcerated at Pleasant Valley

19   State Prison, filed a pro so petition for a writ of habeas corpus under 28 U.S.C. §

20   2254, challenging his state conviction.  Petitioner raised the following claims: 1) the

21   trial court erred in admitting improper opinion testimony which violated petitioner's

22   rights to a jury trial and due process; 2) the trial court erred in failing to give limiting

23   jury instructions which violated petitioner's rights to a jury trial and due process; 3)

24   ineffective assistance of trial counsel for failing to request limiting jury instructions;

25   4) the unconstitutional effect of CALJIC No. 2.20.1; 5) prosecutorial misconduct; 6)

26   ineffective assistance of trial counsel for failing to move to strike improper portions

27   of petitioner's cross-examination; and 7) cumulative error.  This Court found the

28

1  claims, liberally construed, were cognizable and ordered respondent to show cause

2  why a writ of habeas corpus should not be granted.  Respondent has filed an answer

3  to the order to show cause, and petitioner has not filed  traverse.

4

5  **BACKGROUND**

6  The California Court of Appeal set forth the following procedural

7  background:

8  > An information filed on May 11, 2000, in Alameda County
> Superior Court charged [petitioner] with engaging in three or more
9  > acts of substantial sexual conduct with a child under the age of 14
> in violation of Penal Code section 288.5, subdivision (a).
10  > [Petitioner] pleaded not guilty and the matter came up for a jury
> trial on March 7, 2001.  The jury deadlocked, and the court
11  > declared a mistrial.  A second jury trial began a month later.
> Following three days of testimony, the case was submitted to the
12  > jury at 3:33 p.m. on May 10, 2001.  In deliberations that extended
> over three days, the jury made four requests for transcripts,
13  > exhibits, or instructions and reached a verdict of guilty on the
> afternoon of May 14, 2001.
14  > At a sentencing hearing on July 24, 2001, the trial court
> imposed the upper term of 16 years in state prison.  Appellant filed
15  > a timely notice of appeal.

16  People v. Irias, No. A095796, slip op. 1 (Cal.Ct.App. Jan. 31, 2003) (Resp't Ex. G).

17  The following facts are taken from the state appellate court opinion:

18  > [Petitioner] immigrated to this country from Honduras in 1993
> and secured employment in the construction industry.  In 1995, he met
19  > Maria A., who had recently moved to Northern California where her
> sisters lived, leaving her two children with their father in New York.
20  > [Petitioner] and Maria soon began living together and were later
> married in 1998.  Maria's oldest child, her daughter Wendy, joined the
21  > household in 1996, and her son, Jose, arrived two years later.
> About the time she met [petitioner], Maria A. acquired a close
22  > friend, Aridel F., who had a daughter, Hazzell, the same age as
> Wendy.  The two girls became best friends, and their mothers
23  > exchanged childcare duties.  Maria sometimes left Wendy with Aridel
> before leaving for work on weekdays, and Aridel left Hazzell with
24  > Maria on the weekends.
> Sometime in 1996 or 1997, Aridel first received a report
25  > through her daughter, Hazzell, that [petitioner] touched Wendy in an
> inappropriate way.  The girls were then six or seven years old.
26  > According to Hazzell, Wendy told her that [petitioner] touched her in
> her private part.  Aridel did not take any action on this report.
27  > Maria A. testified to receiving a similar report directly from

28

**United States District Court**

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Wendy in 1997.  When she told the child not to let anyone touch her, Wendy replied, "Mario touches me."  Maria immediately called [petitioner] into the room and confronted him with the statement. [Petitioner] denied touching the girl and left the house for a week. After [petitioner] rejoined the household, Maria continued to ask her daughter about inappropriate touching and Wendy consistently denied that it occurred.  Maria recalled, however, that Wendy had once complained in 1996 that her vagina hurt.

Late in 1998, Aridel F. asked Wendy if her stepfather continued to touch her.  She testified that the child tearfully responded in the affirmative.  Aridel called the child's school to report abuse but did not give her name.  Officer Fajardo of the Oakland Unified School District Police Department investigated the anonymous report on December 2, 1998, but he found no indication of abuse after interviewing Wendy, her brother and their mother.

About a year later, Aridel F. decided to speak to the mother's sisters about the matter.  She claims that she and one sister, Marlane, decided to take the child to a clinic for examination without the mother's knowledge.  For her part, Marlane claims that they took her to the clinic for a stomach ailment.  In any event, after [petitioner] took the child to school on the morning of December 21, 1999, the two women picked her up and took her to the Eastmont Health Center where she was seen by Suzanne Schuster, a nurse practitioner. Schuster testified that she talked to the child in private, though she did not have permission to engage in a physical examination.  She explained that she was "a mandatory reporter," subject to a duty to report all information indic[a]ting possible sexual abuse.  On the basis of information received from the child, she made a report to Child Protective Services and referred the child for a medical examination at Children's Hospital.

An emergency response worker in Child Protective Services, Audra Dunning, came to the clinic shortly after the noon hour.  After talking to the two adult women, she interviewed Wendy for about 20 minutes.  She then called the Oakland Police Department.  Officer Marvin Jackson responded to the call and spoke to Wendy at the clinic in the presence of Dunning.  He testified that he obtained a "statement" from the child.  Dunning then assumed protective custody of the child, and over the protests of Aridel F. and Marlane A., took her alone to Children's Hospital for an examination.  She testified that it was important to get the child to the hospital "as soon as possible" because "the last reported incident occurred within 72 hours."  The record does not reveal from whom Dunning received this report.

After taking the child to Children's Hospital, Dunning made an appointment for the child to be interviewed on videotape the next day by a trained person at the Calico Center, which she described as a "multi-disciplinary center for children who have been physically... or sexually abused."  She also met with Officer Jackson who authorized a physical examination of the child.  Late in the day, she met Sharon Levitt, a social worker from Child Protective Services, who assumed responsibility for the case.

At Children's Hospital, Wendy was examined by Dr. Sangeeta Chona, a doctor in the emergency room, who testified that the child displayed "an abnormal hymen."  There was redness and a small tear

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

in the lower portion of the hymen in a location providing "evidence for penetration by finger or penis" rather than a "straddle injury" of the sort that might occur in a bike accident or while playing on monkey bars. After the exam, Dr. Chona referred Wendy to a further exam by a specialist at the Child Protection Clinic.

Dunning arranged to have Wendy placed in a foster home after the examination. Meanwhile, the police contacted her mother who had arrived home from work to find her daughter missing. In testimony of disputed relevance, the social worker, Sharon Levitt, testified that she observed Wendy being interviewed the next day "at the Calico Center where they interview children who have been abused" and then filed a petition "for sexual abuse of Wendy by her stepfather." Later, she made arrangements for the child's schooling while she was in a foster home and scheduled a further medical examination by Dr. James Crawford at the Center for Child Protection at Children's Hospital.

Dr. Crawford examined Wendy on January 20, 2000. He testified that she appeared for the appointment with "a parent and a person from C.P.S." He conducted the exam with an instrument called a colposcope that provided light, magnification, and a camera to document the exam. Dr. Crawford described the examination by analogy to a clock having the hour 12 at the top of the vagina. He found that between the "8:00 and 10:00, right on the side, there was virtually no hymen present, which was abnormal." In his opinion, the abnormality provided "clear evidence... of a prior event where something penetrated into her vagina, tore the tissue and caused the injury... It could be a finger, could be a penis; could be a carrot... [But] it's not the type of injury that you see through normal activities, you know, gymnastics, riding a bike, all those kinds of things." Dr. Crawford did not think the injury was a recent event. It could have occurred at any time between three weeks or three years before the initial examination by Dr. Chona at Children's Hospital.

At trial, Wendy testified that [petitioner] first touched her when she was five and a half. After a friend's birthday party, she fell asleep and he carried her to her mother's bed, lifted her shirt, and touched her private part. She said it happened "a lot" after that time, but in response to further questions she appeared to say it was not a frequent occurrence. [Petitioner] did not touch her for a year after the first incident; he touched her "more than four" times in 1997, three or four times in 1998, and the last time during the week before Christmas in 1999. He would "always" touch her in the early morning after her mother had left for work; he would come into her room, lie down in her bed, pull off her pants, and touch her. In response to a leading question, she said he "used" fingers, his private part, and his mouth, but she declined to provide any details. She remembered telling her Mom about the touching and causing a fight between her Mom and [petitioner]. She thought she might have also told Hazzell.

Taking the stand in his own defense, [petitioner] unequivocally denied ever touching the child inappropriately.

Id., slip op. at 2-5.

Upon the guilty verdict, the trial court sentenced petitioner to the upper term

Order Denying Petition for a Writ of Habeas Corpus
P:\PRO-SE\SJ.JW\HC.04\Irias2740_denyHC.wpd          4

1   of sixteen years in state prison.  Id., slip op. at 1.  Petitioner filed a direct appeal and

2   a state habeas petition.  The California Court of Appeal affirmed the conviction on

3   direct appeal but remanded the case for resentencing on January 31, 2003.[1]  On the

4   same day, the state appellate court denied petitioner's state habeas petition.  The

5   California Supreme Court denied review of both the direct appeal and the state

6   habeas petition on April 16, 2003.  Petitioner then filed the instant federal habeas

7   petition on July 8, 2004.

8

9                            **DISCUSSION**

10  A.      Standard of Review

11         This court may entertain a petition for a writ of habeas corpus "in behalf of a

12  person in custody pursuant to the judgment of a State court only on the ground that

13  he is in custody in violation of the Constitution or laws or treaties of the United

14  States."  28 U.S.C. § 2254(a).

15         The writ may not be granted with respect to any claim that was adjudicated

16  on the merits in state court unless the state court's adjudication of the claim: "(1)

17  resulted in a decision that was contrary to, or involved an unreasonable application

18  of, clearly established Federal law, as determined by the Supreme Court of the

19  United States; or (2) resulted in a decision that was based on an unreasonable

20  determination of the facts in light of the evidence presented in the State court

21  proceeding."  Id. § 2254(d).

22         "Under the 'contrary to' clause, a federal habeas court may grant the writ if

23  the state court arrives at a conclusion opposite to that reached by [the Supreme]

24  Court on a question of law or if the state court decides a case differently than [the]

25

26  _____

27         [1] Petitioner was again sentenced to 16 years in state prison after the resentencing
    hearing.  Petitioner appealed the judgment, but the California Court of Appeal affirmed the
    decision.  See People v. Irias, No. A102660, slip op. 1 (Cal.Ct.App. Nov. 25, 2003).

28

1    Court has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529

2    U.S. 362, 412-13 (2000).  "Under the 'reasonable application clause,' a federal

3    habeas court may grant the writ if the state court identifies the correct governing

4    legal principle from [the] Court's decisions but unreasonably applies that principle

5    to the facts of the prisoner's case." <u>Id.</u> at 413.  "[A] federal habeas court may not

6    issue the writ simply because the court concludes in its independent judgment that

7    the relevant state-court decision applied clearly established federal law erroneously

8    or incorrectly.  Rather, that application must also be unreasonable." <u>Id.</u> at 411.  A

9    federal habeas court making the "unreasonable application" inquiry should ask

10   whether the state court's application of clearly established federal law was

11   "objectively unreasonable." <u>Id.</u> at 409.

12          A federal habeas court may grant the writ it if concludes that the state court's

13   adjudication of the claim "resulted in a decision that was based on an unreasonable

14   determination of the facts in light of the evidence presented in the State court

15   proceeding." 28 U.S.C. § 2254(d)(2).  The court must presume correct any

16   determination of a factual issue made by a state court unless the petitioner rebuts the

17   presumption of correctness by clear and convincing evidence. 28 U.S.C.

18   §2254(e)(1).

19          The only definitive source of clearly established federal law under 28 U.S.C.

20   § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the

21   time of the state court decision. <u>Id.</u> at 412; <u>Clark v. Murphy</u>, 331 F.3d 1062, 1069

22   (9th Cir. 2003).  While circuit law may be "persuasive authority" for purposes of

23   determining whether a state court decision is an unreasonable application of

24   Supreme Court precedent, only the Supreme Court's holdings are binding on the

25   state courts and only those holdings need be "reasonably" applied. <u>Id.</u>

26   ///

27   ///

28

1

B.      Claims and Analysis

2

     1.      Admission of Opinion Testimony

3

        Petitioner first claims that he was denied his rights to a jury trial and

4

due process by the state court's improper admission of the opinion testimony of

5

Levitt, a social worker for Child Protective Services, over the objections of the

6

defense.  Petitioner alleges that Levitt's testimony implied an opinion that petitioner

7

actually molested the victim and that the jury convicted petitioner on reliance of

8

Levitt's opinion without proof of guilt beyond a reasonable doubt.

9

        The admission of evidence is not subject to federal habeas review unless a

10

specific constitutional guarantee is violated or the error is of such magnitude that the

11

result is a denial of the fundamentally fair trial guaranteed by due process.  See

12

Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999); Colley v. Sumner, 784 F.2d

13

984, 990 (9th Cir.), cert. denied, 479 U.S. 839 (1986).  Failure to comply with state

14

rules of evidence is neither a necessary nor a sufficient basis for granting federal

15

habeas relief on due process grounds.  See Henry,197 F.3d at 1031; Jammal v. Van

16

de Kamp, 926 F.2d 918, 919 (9th Cir. 1991).  While adherence to state evidentiary

17

rules suggests that the trial was conducted in a procedurally fair manner, it is

18

certainly possible to have a fair trial even when state standards are violated;

19

conversely, state procedural and evidentiary rules may countenance processes that

20

do not comport with fundamental fairness.  See id. (citing Perry v. Rushen, 713 F.2d

21

1447, 1453 (9th Cir. 1983), cert. denied, 469 U.S. 838 (1984)).  The due process

22

inquiry in federal habeas review is whether the admission of evidence was arbitrary

23

or so prejudicial that it rendered the trial fundamentally unfair.  See Walters v.

24

Maass, 45 F.3d 1355, 1357 (9th Cir. 1995); Colley, 784 F.2d at 990.  But note that

25

only if there are no permissible inferences that the jury may draw from the evidence

26

can its admission violate due process.  See Jammal, 926 F.2d at 920.

27

        In order to obtain habeas relief on the basis of an evidentiary error, a

28

Order Denying Petition for a Writ of Habeas Corpus
P:\PRO-SE\SJ.JW\HC.04\Irias2740_denyHC.wpd

7

**United States District Court**
For the Northern District of California

petitioner must show that the error was one of constitutional dimension <u>and</u> that it was not harmless under <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993). He would have to show that the error had "'a substantial and injurious effect' on the verdict.'" <u>Dillard v. Roe</u>, 244 F.3d 758, 767 n.7 (9th Cir. 2001) (quoting <u>Brecht</u>, 507 U.S. at 623).

The California Court of Appeal summarized Levitt's testimony as follows:

> [...] Levitt identified herself as a child welfare worker for Children's Protective Services "specializing in sexual abuse." She explained that she was assigned Wendy's case after the child was put into a foster home and began to describe in general terms the nature of a dependency investigation. At this point, defense counsel asked to approach the bench. The court allowed the prosecution to continue its examination and later overruled a renewed defense objection. Following Levitt's testimony, the court explained that it overruled the defense objections on the grounds of relevancy because it "believe[d] the witness' testimony was relevant in the sense of connecting the various elements of the time line... I would permit the witness to testify on that limited basis of explaining how the complaining witness got to Dr. Crawford."
> In a brief direct examination, the prosecution asked Levitt to explain the context of Dr. Crawford's examination of the child. She testified that she scheduled the examination as "a follow-up from the emergency room." The purpose of the examination was to check on medical cultures revealing possible infections and to do "a more thorough medical examination." The Center for Child Protection, where Dr. Crawford worked, were "the experts."
> In addition, the prosecution asked Levitt a short series of questions about the dependency proceeding. She testified that she was responsible for "protection of Wendy so any abuse that had occurred to her would not occur again." She took Wendy to "the Calico Center, where they interview children who have been abused." After observing this interview, she filed a petition "for sexual abuse of Wendy by her stepfather." Later, after Wendy was placed in a foster home, she arranged schooling for the child and visited her several times to see if she was "having any problems."

<u>People v. Irias</u>, No. A095796, slip op. at 5-6.

After reviewing the evidence, the state appellate court found that the trial court had not abused its discretion in admitting Levitt's testimony to explain the "time line" leading to Dr. Crawford's examination. <u>Id.</u> However, the court found that Levitt's testimony about the dependency proceeding was neither relevant nor necessary to establish the context of Dr. Crawford's examination. Nevertheless, the

United States District Court

For the Northern District of California

1   court found that the error was neither prejudicial nor that the exclusion of Levitt's

2   testimony would have led to a different result:

> We note... that the testimony was brief, unembellished and
> relatively colorless.  Levitt never testified directly about the child's
> statements or offered an explicit opinion as to the child's veracity.
> The jury was informed only that a county agency, Child Protective
> Services, was taking action on the case.  The testimony added little
> to other evidence of official action to which no objection was raised.
> The emergency response worker, Audra Dunning, testified that she
> contacted police, that she and the responding police officer thought
> the child should be in protective custody, and that the child was
> taken to a foster home.  The police officer, Marvin Jackson, testified
> that the child was taken into protective custody and that he requested
> a sexual assault examination.  The child's mother testified that the
> police arrived at her home at 4:30 that afternoon.
>   While the record of a previous mistrial and somewhat
> extended jury deliberation suggests that evidence of guilt presented a
> close case, it does not follow that every error was prejudicial.  We
> see no reasonable possibility that the exclusion of the disputed
> portion of Levitt's testimony would have led to a different result.
> (People v. Watson (1956) 46 Cal.2d 818, 836.)  We have carefully
> considered [petitioner's] claim of federal constitutional error and
> find that it is not supported by the facts of the case.

Id., slip op. at 7-8.

      Petitioner was not denied a fundamentally fair trial guaranteed by due process

by the admission of Levitt's testimony.  See Henry, 197 F.3d at 1031.  The state

appellate court correctly found that the trial court had not erred in admitting Levitt's

testimony on the grounds that the evidence was relevant pursuant to Cal. Evid. Code

§ 350.  People v. Irias, No. A095796, slip op. at 6.  The trial court found that Levitt's

testimony was necessary to explain the "time line" of how the victim came to be

examined by Dr. Crawford whose testimony was a crucial part of the prosecution's

case in retrial.  Id.  It is more likely that Dr. Crawford's testimony was the evidence

that made the difference in the retrial resulting in a guilty verdict rather than the

testimony of Levitt as petitioner contends.  Dr. Crawford testified that the

abnormality he observed in the victim's hymen presented "clear evidence... of a

prior event where something penetrated into her vagina, tore the tissue and cause the

injury... It could be a finger, could be a penis; could be a carrot... [But] it's not the

1  type of injury that you see through normal activities, you know, gymnastics, riding a

2  bike, all those kinds of things." <u>See</u> *supra* at 4.  Such graphic expert testimony no

3  doubt contributed much to the jury's deliberations, more so than the allegedly

4  improper opinion testimony by Levitt.  Because Levitt's testimony was relevant to

5  lay the foundation for Dr. Crawford's testimony, the admission of Levitt's testimony

6  was neither arbitrary or so prejudicial that it rendered the trial fundamentally unfair.

7  <u>See</u> <u>Walters</u>, 45 F.3d at 1357.

8       This Court agrees with the state appellate court's finding that although

9  Levitt's testimony regarding the dependency proceeding was irrelevant and therefore

10  inadmissible, this error by the trial court was harmless under <u>Brecht</u>, 507 U.S. 619.

11  In light of the compelling direct evidence from the victim, the expert testimony by

12  Dr. Crawford, and the brevity of Levitt's testimony, petitioner has failed to show

13  that the error in admitting the irrelevant portion of Levitt's testimony had "'a

14  substantial and injurious effect' on the verdict.'" <u>Dillard</u>, 244 F.3d at 767 n.7

15  (quoting <u>Brecht</u>, 507 U.S. at 623).

16       The state court's rejection of this claim was not contrary to, nor an

17  objectively unreasonable application of, Supreme Court precedent.  <u>See</u> 28 U.S.C. §

18  2254(d).  Petitioner's claim has no merit and is DENIED.

19       2.    <u>Limiting Jury Instructions</u>

20            Petitioner's second claim is that the trial court failed to give limiting

21  instructions that Levitt's testimony could not be used to prove abuse occurred or that

22  petitioner was guilty of the charged offenses, and thereby violated his rights to a jury

23  trial and due process.

24       A state trial court's failure to give an instruction does not alone raise a ground

25  cognizable in a federal habeas corpus proceedings.  <u>See</u> <u>Dunckhurst v. Deeds</u>, 859

26  F.2d 110, 114 (9th Cir. 1988).  The omission of an instruction is less likely to be

27  prejudicial than a misstatement of the law.  <u>See</u> <u>Walker v. Endell</u>, 850 F.2d 470,

28

Order Denying Petition for a Writ of Habeas Corpus
P:\PRO-SE\SJ.JW\HC.04\Irias2740_denyHC.wpd          10

United States District Court

For the Northern District of California

475- 76 (9th Cir, 1987).  Thus, a habeas petitioner whose claim involves a failure to give a particular instruction bears an "'especially heavy burden.'"  <u>Villafuerte v. Stewart</u>, 111 F.3d 616, 624 (9th Cir. 1997) (quoting <u>Henderson v. Kibbe</u>, 431 U.S. 145, 155 (1977)).

Here, petitioner's trial counsel failed to ask the trial court for limiting instructions.  The Court finds that petitioner has not met the "heavy burden" that a habeas petitioner must overcome when the claim involves a failure to give a particular limiting instruction.  <u>Villafuerte</u>, 111 F.3d at 624.  Therefore, petitioner is not entitled to federal habeas relief on this claim.  Petitioner's claim is DENIED.

3.    <u>Ineffective Assistance of Counsel</u>

Petitioner next claims that he received ineffective assistance of counsel when his trial counsel failed to request limiting instructions on the use of the Levitt's testimony.

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things.  First, he must establish that trial counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  <u>Strickland v. Washington</u>, 466 U.S. at 687-88 (1984).  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> at 694.

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as the result of the alleged deficiencies.  <u>See id.</u> at 697; <u>Williams v. Calderon</u>, 52 F.3d 1465, 1470 & n.3 (9th Cir. 1995) (applauding district court's refusal to consider whether counsel's conduct was deficient after determining that petitioner could not establish prejudice), <u>cert. denied</u>, 516 U.S. 1124 (1996).

Petitioner's claim is without merit as petitioner fails to show that he was prejudiced by the allegedly deficient performance.  See <u>Strickland</u>, 466 U.S. at 697. As discussed in petitioner's first claim involving inadmissible evidence, there was such strong evidence against petitioner that it is doubtful that Levitt's testimony had "'a substantial and injurious effect' on the verdict.'"  <u>Dillard</u>, 244 F.3d at 767 n.7. The victim child gave direct evidence regarding the molestation and an expert medical witness gave compelling testimony on his examination of the child.  <u>See</u> *supra* at 9.  It cannot therefore be said that there was a reasonable probability that, but for trial counsel's failure to request limiting instructions on the use of the social worker's testimony, the result of the proceedings would have been different. <u>Strickland</u>, 466 U.S. at 694.  Accordingly, the state court's rejection of this claim was not contrary to, nor an objectively unreasonable application of, Supreme Court precedent.  <u>See</u> 28 U.S.C. § 2254(d).  Petitioner's claim has no merit and is DENIED.

4.     CALJIC No. 2.20.1

Petitioner claims that CALJIC No. 2.20.1 is unconstitutional because it "invades the jury's province, unfairly bolstered Wendy's credibility, and impaired [petitioner's] ability to impeach Wendy's credibility by telling the jury not to consider a child witness' level of cognitive development - her inability to perceive, understand, remember, or communicate - as indications she was not believable, though such factors are relevant to assessing an adult witness' credibility."  (Pet. at 13.)

An instruction telling the jury that "[e]very witness is presumed to speak the truth" and explaining ways in which that presumption might be overcome does not violate due process, however undesirable and erroneous it may be.  <u>Cupp v. Naughten</u>, 414 U.S. 141, 142 (1973).  In light of <u>Cupp</u>, the Ninth Circuit Court of Appeals held that jury instruction CALJIC No. 2.20.1, provided in a child sexual

United States District Court
For the Northern District of California

1    abuse case, does not clearly violate clearly established Supreme Court law.  See

2    Brodit v. Cambra, 350 F.3d 985, 990-91 (9th Cir. 2003).

3        Petitioner's claim is without merit.  The Ninth Circuit Court has specifically

4    ruled that CALJIC 2.20.1 does not clearly violate clearly established Supreme Court

5    law.  Id.  Accordingly, the state court's rejection of this claim was not contrary to,

6    nor an objectively unreasonable application of, Supreme Court precedent.  See 28

7    U.S.C. § 2254(d).  Petitioner's claim is DENIED.

8        5.    Prosecutorial Misconduct

9        Petitioner alleges that the prosecution engaged in misconduct during

10   closing argument when the prosecution "unfairly bolstered Wendy's credibility

11   when he argued to the jury that the difference between Wendy's demeanor and

12   Hazzell's showed that Wendy had been sexually abused." (Pet. at 20.)  Petitioner

13   claims this misconduct violated his right to due process and right to confront

14   witnesses against him.

15       Prosecutorial misconduct is cognizable in federal habeas corpus.  The

16   appropriate standard of review is the narrow one of due process and not the broad

17   exercise of supervisory power.  See Darden v. Wainwright, 477 U.S. 168, 181

18   (1986).  A defendant's due process rights are violated when a prosecutor's

19   misconduct renders a trial "fundamentally unfair."  See id.; Smith v. Phillips, 455

20   U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged

21   prosecutorial misconduct is the fairness of the trial, not the culpability of the

22   prosecutor").  Under Darden, the first issue is whether the prosecutor's remarks were

23   improper; if so, the next question is whether such conduct infected the trial with

24   unfairness.  Tan v. Runnels, 413 F.3d 1101, 1112 (9th Cir. 2005).  See, e.g., Comer

25   v. Schriro, 463 F.3d 934, 961 (9th Cir. 2006) (finding that while prosecutor's

26   remarks, calling petitioner a "monster," "filth," and a "reincarnation of the devil"

27   were improper, they did not rise to the level of a due process violation because the

28

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  prosecutor did not misstate or manipulate the evidence, the jury instructions

2  provided by the court were adequate, and there was strong evidence of petitioner's

3  guilt.)  A prosecutorial misconduct claim is decided "'on the merits, examining the

4  entire proceedings to determine whether the prosecutor's remarks so infected the

5  trial with unfairness as to make the resulting conviction a denial of due process.'"

6  Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995) (citation omitted).

7       The California Court of Appeal summarized the court record with respect to

8  the claim of prosecutorial misconduct:

> [...]  Referring to the testimony of the child's friend, Hazzell,
> the prosecutor sought to make an incriminating comparison: "Now,
> there was no testimony from psychologists; but you had an
> opportunity to observe two children, the same age.  You had an
> opportunity to observe Wendy get on the stand; Wendy who is
> damaged because at the tender age of five years old, a full grown
> man began having sexual relations with her; Wendy, who is quiet,
> and withdrawn and juxtapose her to her friend, Hazzell, who hasn't
> been molested, who can sit up forthright and talk about stuff and –."
>       At this point defense counsel objected that the argument
> assumed facts not in evidence.  The court overruled the objection but
> cautioned the jury as follows: "Ladies and gentlemen, I'm going to
> overrule the objection but with this comment, and that is: that I told
> you on more than one occasion that statements by counsel, including
> the statements made during argument are not themselves evidence.
> Counsel are not permitted to make arguments when there is no
> evidence to support the argument; but counsel are permitted to argue
> things which can be drawn as inferences, conclusions which can
> reasonably be drawn from the evidence.  It's up to you to decide
> whether the facts are there to support these arguments or not."
> Apparently unsatisfied with this judicial intervention, defense
> counsel protested the unfairness of the prosecution's comparison of
> the two girls' demeanor in his argument to the jury.

21  People v. Irias, No. A095796, slip op. at 12.

22       Petitioner's claim is without merit.  Even assuming the prosecution's

23  statements during closing argument rose to the level of misconduct, the defense

24  counsel's objections, the trial court's cautionary instructions and defense counsel's

25  rebuttal statements in his own closing argument make it doubtful that the misconduct

26  so infected the trial with unfairness as to make the resulting conviction a denial of

27  due process.  See Johnson, 63 F.3d at 929.  It cannot be said that the alleged

28

1    misconduct rendered the trial "fundamentally unfair." <u>Darden</u>, 477 U.S. at 181.

2    Accordingly, the state court's rejection of this claim was not contrary to, nor an

3    objectively unreasonable application of, Supreme Court precedent. <u>See</u> 28 U.S.C. §

4    2254(d).  Petitioner's claim is DENIED.

5              6.    <u>Ineffective Assistance of Counsel</u>

6              Petitioner claims that his trial counsel rendered ineffective assistance

7    by failing to move to strike a bulk of petitioner's cross-examination wherein the

8    prosecutor repeatedly forced petitioner "to either admit having molested Wendy or

9    call her a liar." (Pet. at 14.)  Petitioner alleges that trial counsel made belated

10   objections to the prosecution's repeated use of the word "lying" and that when his

11   objections were finally sustained, trial counsel then failed to strike the improper

12   testimony which the jury requested to have read back during deliberations.

13          As discussed in petitioner's first claim of ineffective assistance of counsel,

14   <u>see</u> <i>supra</i> at 11-12, this claim is without merit as petitioner fails to show that he was

15   prejudiced by the allegedly deficient performance.  <u>See</u> <u>Strickland</u>, 466 U.S. at 697.

16   The fact that the jury requested a readback of petitioner's cross-examination is not

17   sufficient to show that the disputed portion had a "substantial and injurious effect"

18   on the jury's deliberations, especially since the jury requested and received

19   readbacks of all of Dr. Crawford's testimony and all of Wendy's testimony as well.

20   (Resp't Ex. B at 366-371.)  As discussed above, there was such strong evidence

21   against petitioner, including the testimonies of the victim child and the expert

22   medical witness, that it is doubtful that trial counsel's allegedly deficient

23   performance with respect to petitioner's cross-examination had "'a substantial and

24   injurious effect' on the verdict.'" <u>Dillard</u>, 244 F.3d at 767 n.7.  It cannot be said that

25   there is a reasonable probability that, but for trial counsel's failure to move to strike

26   the offending portions of the testimony from the record, the result of the proceedings

27   would have been different. <u>Strickland</u>, 466 U.S. at 694.  Accordingly, the state

28

United States District Court
For the Northern District of California

court's rejection of this claim was not contrary to, nor an objectively unreasonable application of, Supreme Court precedent.  <u>See</u> 28 U.S.C. § 2254(d).  Petitioner's claim has no merit and is DENIED.

       7.    <u>Cumulative Error</u>

       Petitioner lastly claims that the constitutional errors result in cumulative prejudice against him, depriving him of a fair trail.  <u>See</u> <u>Alcala v. Woodford</u>, 334 F.3d 862, 893-95 (9th Cir. 2003) (reversing conviction where multiple constitutional errors hindered defendant's efforts to challenge every important element of proof offered by prosecution).  However, where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation.  <u>See</u> <u>Mancuso v. Olivarez</u>, 292 F.3d 939, 957 (9th Cir. 2002).  Petitioner has no basis for claim of cumulative error because his petition failed to raise even a single constitutional error that had a prejudicial effect.  <u>See</u> <u>Mancuso</u>, 292 F.3d 939 at 957.  The state court's rejection of this claim was not contrary to or an unreasonable application of Supreme Court precedent.  <u>See</u> 28 U.S.C. § 2254(d).  Petitioner's claim is DENIED.

# CONCLUSION

      For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

DATED:     September 26, 2007                        

JAMES WARE
United States District Judge